IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| SAY IT VISUALLY, INC.,<br>*Plaintiff*,<br><br>v.<br><br>UNIVERSAL MORTGAGE & FINANCE,<br>INC. *et al*.,<br>*Defendants* | Civil Action No.<br>GLR-22-cv-3280 |

**MEMORANDUM OPINION & ORDER**

Pending before the Court is a discovery dispute in this copyright case between Plaintiff Say It Visually, Inc., d/b/a Fast Forward Stories ("FFS"), and Defendants Universal Mortgage and Finance, Inc. ("UMAFI") and Ronald G. Taylor (together, "Defendants").[1] Pursuant to Judge Russel's Standing Order on Discovery Procedures, ECF No. 12-2 at ¶ 5, the parties filed letters identifying the dispute and stating their positions. ECF No. 31 ("FFS Letter"); ECF No. 32 ("Defs.' Letter"). Pursuant to 28 U.S.C. § 636 and Local Rules 301 and 302, this discovery dispute has been referred to the undersigned. ECF No. 33. The Court held a telephonic discovery conference on October 10, 2023.

FFS contends that Defendants' responses to certain interrogatories were incomplete or otherwise that Defendants failed to comply with their obligation, under Rule 26 of the Federal Rules of Civil Procedure, to respond to certain interrogatories. In advance of the October 10 conference, the parties met and conferred. Defendants agreed to supplement and/or amend their

---

[1] Although claims have since been lodged against another defendant, Think One Thing, LLC ("Think One Thing"), the current dispute is between FFS, on one hand, and UMAFI and Mr. Taylor, on the other. Accordingly, the Court refers to UMAFI and Mr. Taylor as "Defendants" for purposes of this opinion.

1

responses to a number of those interrogatories, but stood on their objections with respect to others. The resolution of the parties' disputes as to each interrogatory is set forth below.

## BACKGROUND

FFS is a corporation based in Bellingham, Washington, that creates and licenses "explainer" videos, which FFS describes as "one to two minute videos that explain various terms or practices for a given industry." ECF No. 35 (Amended Complaint) ("Compl.") at ¶ 9.[2] FFS's "business model includes licensing its videos to subscribers, who pay an initial fee plus a monthly subscription for permission to feature the FFS videos on their websites." *Id.* ¶ 14. Defendant UMAFI is, at least in part, in the mortgage brokering business. *Id.* ¶ 15. In June 2014, FFS and UMAFI entered into a licensing contract, under which UMAFI was granted a license to use certain FFS videos under specified terms and conditions, including prohibitions on modifying FFS videos or removing FFS copyright management information from them. *Id.* ¶ 18. UMAFI continued to pay the monthly licensing fees through the summer of 2019. *Id.* ¶ 19. FFS contends that UMAFI terminated the contract in summer 2019, thereby terminating its right to "access, display, or reproduce any FFS video," *id.* ¶ 39, but nonetheless "continued to reproduce and distribute them, including on the UMAFI YouTube Channel and the UMAFI Facebook page," as well as through other channels, either directly or by inducing one or more third parties to do so. *Id.* ¶¶ 40-42. Those videos, which allegedly remained on the UMAFI YouTube Channel and the UMAFI Facebook page until they were removed in or about February 2021, *id.* ¶¶ 64, 67, are the alleged "Infringing Works" at issue. *See id.* ¶ 11 & Compl. Ex. 1.

---

[2] The Court neither accepts as true nor resolves disputes regarding the truth of FFS's allegations. The Courts sets forth the background as alleged by FFS, as those claims set forth at least the starting point for assessing the permissible scope of discovery under Rule 26(b).

In December 2022, FFS sued UMAFI, and Mr. Taylor, whom FFS contends is UMAFI's "principal and/or chief executive officer" and/or its "primary or sole owner," alleging claims of copyright infringement and violations of the Digital Millennium Copyright Act. ECF No. 1; *see id.* ¶¶ 16-17. The Defendants filed an answer, ECF No. 9, and further asserted a counterclaim for "prevailing party costs and attorneys' fees," *id.* ¶ 79. The parties then stipulated to (1) dismissal of Count I of FFS's complaint, which had sought a declaratory judgment regarding arbitrability, and (2) dismissal without prejudice of Defendants' counterclaim. ECF No. 18. The Court then denied as moot FFS's partial motion to dismiss as to Defendants' counterclaim. ECF No. 23. FFS also moved for leave to file an amended complaint seeking to add claims against Think One Thing, ECF No. 27, along with an unopposed motion to stay pending appearance of counsel by Think One Thing, ECF No. 29. The Court granted the motion to stay, and simultaneous with referral of this discovery dispute, has also since granted leave to amend. ECF Nos. 30, 33 & 34.

## DISCUSSION

The present dispute turns on whether Defendants have complied with their obligations to comply with FFS's interrogatories 2, 5, 7, 8 and 9.[3]

**Interrogatory No. 2**: ("*Describe the creation of each Infringing Work, including when it was created, why it was created, identification of all persons or entities who had any role or provided any assistance in its creation (and a description of the role / assistance), and the reasons for each modification to any copy of a Work in Suit. This includes an identification of the natural person or persons responsible for modifying the Works in Suit to create the Infringing Works.*"). The dispute as to this interrogatory arose from Defendants' responses, which,

---

[3] Although as originally presented FFS also disputed Defendants' compliance as to interrogatories 1 and 6, the parties requested that the Court hold those disputes in abeyance pending supplementation and potential further conferral.

following incorporation of objections, stated, "Notwithstanding and without waiving the aforementioned objections, and to the extent Defendant interprets this Interrogatory, Defendant has no direct knowledge of any acts of creation or modification of what Plaintiff refers to as the Infringing Works." FFS takes issue with Defendants' limitation of their response to their "direct" knowledge. This interrogatory is broader than Defendants' "direct" knowledge of how the alleged Infringing Works were created or modified. Defendants' knowledge, whether direct or indirect, of how the alleged Infringing Works came to be created or modified, is responsive to Interrogatory No. 2, and is within the scope of discovery as set forth in Federal Rule 26(b). Accordingly, as discussed during the discovery conference, Defendants shall supplement and/or amend their responses to this interrogatory.

**Interrogatory No. 5** ("*Identify all distributions of any of the Infringing Works. This includes downloads, uploads, pageviews, FTP transfers, e-mail transfers, and transfers by physical media such as flash drives, and specifically includes the number of pageviews or downloads from the UMAFI YouTube Channel, and any other online or social media channels. If you are unable to answer this interrogatory fully because of the loss of records or data, include in your answer what those records or data were and describe when and why such records or data was lost or destroyed.*"). Following their objections, Defendants each responded, "Notwithstanding and without waiving the aforementioned objections, and to the extent Defendant interprets this Interrogatory, . . . Defendant was not in possession or control of any such Infringing Works, so nothing to identify." Plaintiffs contend that Defendants' assertion that they were "not in possession or control of any such Infringing Works" is "not a proper basis for refusing to answer" and that "it strains credulity that UMAFI has no knowledge or information over distributions of its own advertising materials." FFS Letter at 2 (emphasis omitted).

4

Although Defendants contend that newly added defendant Think One Thing was responsible for any posting and modification of the alleged Infringing Works, FFS contends that Think One Thing acted as an agent of Defendants. Whether Think One Thing was FFS's agent is in dispute, but in any event it is a proper subject of discovery. Defendants shall supplement their responses to Interrogatory No. 5 to respond as to their responsive knowledge, whether direct or indirect, and regardless of whether Defendants deny that Think One Thing acted as an agent of Defendants.

**Interrogatory No. 7** ("*Explain fully the removal of copies of Infringing Works that were on the UMAFI Facebook Page and the UMAFI YouTube Channel prior to February 17, 2021. This includes identification of the person or persons doing so, when they did so, who directed them to do so, and whether or not copies of the removed materials were maintained. If copies of the removed materials were not maintained, include your explanation of why such materials were not maintained.*"). According to FFS, this interrogatory was prompted because, after FFS sent a cease-and-desist letter in February 2021, certain videos that FFS contends constitute Infringing Works were removed from UMAFI's Facebook and YouTube pages. Defendants appear to contend they did not, and do not, control the content on those sites, and/or that Think One Thing had sole control over those pages. Regardless, Defendants each responded to this interrogatory stating, "Defendant is not aware of any such removal operations and again notes that at no time did Defendant have possession or control the Infringing Works as identified in this action. Further answering, Defendant notes that following receipt of a demand letter from Lois [*sic*] Bonham, Esq., an employee of Defendant did request that Think One Thing take down any videos of interest to Plaintiff which email was already proceeded in response to Requests for Production of Documents."

Defendants' position is that they simply have no additional information, direct or indirect, in response to this interrogatory, and thus nothing to provide by means of supplementation. Accordingly, the Court will not require supplementation at this time. Defendants (and Plaintiff), however, remain subject to the supplementation obligations imposed by Rules 26(a)(1)(E), 26(e), and 37(c).

**Interrogatories regarding alleged damages.** Plaintiff issued two interrogatories related to its claim for damages:

> Interrogatory No. 8. Identify each item of value (including monetary payments, rights to receive future monetary payments, forgiveness or reductions of any debt owed, or any other asset) that you received in connection with any activities promoted by the UMAFI YouTube Channel, the UMAFI Facebook page, or any other distributions or displays of the Infringing Works, including all income received for mortgage origination or mortgage brokering from January 1, 2018 through February 1, 2023. Include in your answer the date you received each such item of value, and the basis for your receiving it (e.g., mortgage brokering fees). If the value of any such item was unliquidated, include in your answer what you contend the value of such item was upon your receipt of it.
>
> > Response: There is no reason to believe that anything of value was ever received in connection with any activities promoted by the UMAFI YouTube Channel, the UMAFI Facebook page, or any other distributions or displays of the Infringing Works.
>
> Interrogatory No. 9. Identify each and every element of expense, allocation, or any other deduction that you claim to be entitled to assert pursuant to 17 U.S.C. § 504(b) and identify the specific evidence you contend supports each element of expense, allocation, or deduction. If your answer includes any sort of calculation or allocation, include a complete description of the methodology used. If your answer includes reference to any summary document (e.g., profit/loss statement, or income statement), include in your answer an identification (including the location) of the documents that back up or otherwise form the factual basis for the summary. If your answer includes overhead expenses, for each such overhead expense include in your answer: (1) how the overhead expense was related to the activities promoted by the distribution or display of any of the Infringing Works; (2) how the overhead expense was of actual assistance in activities promoted by the distribution or display of any of the Infringing Works; and (3) what you contend the "fair and acceptable formula" for determining how much of the claimed overhead expense should be allocated to the activities promoted by the distribution or display of any of the Infringing Works.

        <u>UMAFI Response</u>: Objection. See General Objections 1,7, and 9. Notwithstanding and without waiving the aforementioned objections, and to the extent Defendant interprets this Interrogatory, all of Defendant's business is referral driven and thus there are no known instances from in recent times in which a specific branch or loan originator was not compensated as a referral source for a given loan. More specifically. Defendant utilizes an internal 'Loan Desk' system for purposes of assigning loans from either a general marketing effort (for which no known loans have ever closed pursuant to) or for assigning leads from a loan originator internally in relation to loans in a state for which the referring loan originator is not licensed. For example, had a Florida based loan originator had a borrower in need of a loan in Maryland, but was not licensed there, said referring loan originator would assign the loan to Maryland licensed loan originator and their respective compensation would be adjusted accordingly. Upon review, there are simply no instances in which a loan was closed in relation to a loan originating in response to on-line marketing or for which the source was not a direct contact of a loan originator.

        <u>Taylor Response</u>: Objection. See General Objections 1,4, 7, and 9. Notwithstanding and without waiving the aforementioned objections, and to the extent this Defendant interprets this Interrogatory, all of Defendant Universal Mortgage & Finance, Inc.'s business is referral driven and thus there are no known instances in which a specific branch or loan originator was not compensated as a referral source for a given loan. This Defendant further adopts the response of Defendant Universal Mortgage & Finance, Inc.

    FFS contends Defendants' responses are improper as a matter of law because, under 17 U.S.C. § 504(b), FFS "need only prove UMAFI's gross revenues, which stand as the measure of infringer profits unless UMAFI prove[s] its expenses and any other deductions," and that "a defendant['s] revenues from product sales or lines of business promoted by or that include an infringing use of a copyrighted work are 'gross revenues' under § 504(b)." FFS Letter at 2 (citing *Andreas v. Volkswagen of America, Inc.*, 336 F.3d 789, 795-99 (8th Cir. 2003); *Frank Music Corp. v. Metro-Goldwyn Mayer, Inc.*, 772 F.2d 505, 516-19 (9th Cir. 1985)).

Where a copyright owner establishes liability for copyright infringement, the owner "is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." 17 U.S.C. § 504(b). And of particular relevance here, "In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." *Id.*

In Defendants' letter they agreed to supplement their responses to interrogatories 8 and 9. But at the discovery conference it became clear that the parties dispute the proper scope of damages discovery in a copyright infringement case like this. FFS contends that *all* of UMAFI's gross revenues necessarily constitute the starting point for a § 504(b) analysis—the "infringer's gross revenue" within the meaning of that section—or at least are discoverable. Defendants appear to contend that until and unless FFS makes a threshold showing that particular people actually viewed the alleged Infringing Works, and became UMAFI customers, leading to revenue for UMAFI, *because* of having viewed them, FFS is not entitled to discovery of any of UMAFI's gross revenues.

At this stage the Court does not, of course, decide whether UMAFI generated any profits "as a result of the [alleged] infringement," or "attributable to" the infringement, as opposed to "factors other than the copyrighted work," or the amount of such profits or revenues. *See* 17 U.S.C. § 504(b). Instead, the question is what portion of UMAFI's revenues, if any, are "relevant to any party's claim or defense and proportional to the needs of the case," Fed. R. Civ. P. 26(b)(1), in a context of a case where FFS contends that some portion of UMAFI's revenues

8

constituted "actual damages suffered by [FFS] as a result of the infringement" and "profits . . . attributable to the infringement."

On one hand, FFS need not *prove* that UMAFI in fact generated revenue attributable to the alleged Infringing Works before being entitled to discovery of at least some of UMAFI's revenues during the years in which those works remained on the UMAFI Facebook and YouTube pages but UMAFI allegedly failed to pay licensing fees (summer 2019 to February 2021); that would be putting the cart far ahead of the horse. On the other hand, if, say, UMAFI, in addition to its mortgage business, ran a bowling alley, there likely could be no plausible nexus between continued publication of the alleged Infringing Works and bowling alley revenues.

Courts handle this distinction, at least in the context of entity defendants sued for copyright infringement, by focusing on a defendant's *lines of business*. "[G]ross revenue" within the meaning of § 504(b) "does not mean the infringer's gross revenue from all of its commercial endeavors," but rather, "the gross revenue for the infringer's line of business or project related to the infringement." *Nelson-Salabes, Inc. v. Morningside Development, LLC*, 284 F.3d 505, 512 n.9 (4th Cir. 2002) (citing *On Davis v. Gap, Inc.*, 246 F.3d 152, 160 (2d Cir. 2001)). After all, the question of whether damages are "attributable to the infringement," 17 U.S.C. § 504(b), is "a rule of causation," which "'in turn requires that the damages be direct rather than remote, and that an appropriate apportionment be made between revenue attributable to infringement and other revenue.'" *Walker v. Forbes, Inc.*, 28 F.3d 409, 412 (4th Cir. 1994) (quoting 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 14.03 (1993)). "[F]iendish difficulties" can arise concerning the calculation of how much a plaintiff has lost, and how much a defendant has gained, where infringement is proven, particularly "where the revenue stream is complex or the apportionment difficult because of the strength of other factors as engines of revenue and profit."

9

*Id.* at 412, 413. *See also Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 517, 524 (4th Cir. 2003) (although plaintiff "contended that some portion of essentially *all* of the Defendants' revenues was attributable to the infringing use of Bouchat's artwork," affirming grant of partial summary judgment to defendants where plaintiff "offered only speculative evidence of a causal link between the infringement and the level of the revenues that the Defendants earned" as to particular revenue streams).

Here, FFS contends that UMAFI "is in the mortgage brokering business." Compl. ¶ 15. But UMAFI contends that only "a portion of" UMAFI's operations "relate to mortgage brokering." ECF No. 9 ¶ 15. The alleged Infringing Works, in turn, are alleged to "include videos that explain what adjustable rate mortgages are and how they work, what an 'interest lock' is, what takes place at a real estate closing, etc.," ECF No. 10 ¶ 10, but FFS contends that Defendants published twenty-three separate videos, and the record does not reflect whether all pertain directly to UMAFI's mortgage business (or part thereof), or if they pertain to other lines of business that UMAFI may maintain. If UMAFI's business is entirely in the line(s) of business "related to the [alleged] infringement," *see Nelson-Salabes*, 284 F.3d at 512, then all of UMAFI's gross revenue, during the relevant time period, may very well be relevant to the analysis set forth in § 504(b) and thus discoverable. What UMAFI may not do, at this stage, is refuse to produce financial data on the ground that FFS will be unable to *prove* that certain revenues are attributable to the alleged infringement; that issue will be determined later in the litigation. If UMAFI's concern with production of such financial data is confidentiality, those concerns can be addressed through designations pursuant to the Confidentiality and Protective Order that has already been entered (ECF No. 24).

## CONCLUSION

For the foregoing reasons, Defendants must supplement their responses to interrogatories 2, 5, 8 and 9.

Date: October 24, 2023                              /s/
                                                    Adam B. Abelson
                                                    United States Magistrate Judge